**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| EILEEN CLANCY, Individually And On Behalf Of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| NATIONSBENEFITS, LLC and AETNA INC. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Eileen Clancy ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Defendants NationsBenefits, LLC ("NationsBenefits") and Aetna Inc. ("Aetna" and, together with NationsBenefits, "Defendants"), and alleges upon personal knowledge as to herself and upon information and belief as to all other matters.

## INTRODUCTION

1.     Plaintiff brings this class action against Defendants for their failure to secure and safeguard her and over 3,000,000 other individuals' personally identifying information ("PII") and personal health information ("PHI"), which included names, dates of birth, addresses, phone numbers, genders, health plan subscriber identification numbers, social security numbers ("SSNs"), and Medicare numbers.

2.     NationsBenefits provides healthcare solutions and supplemental benefits to managed care organizations.

3.     Aetna is a healthcare benefits company that offers various insurance plans.

4.      Aetna provides the PII/PHI of its customers to NationsBenefits in connection with insurance or healthcare services.  On February 7, 2023, NationsBenefits was notified that Fortra, LLC ("Fortra"), the provider of a file transfer software used by NationsBenefits, experienced a data breach on or about January 30, 2023.  Unauthorized individual(s) breached Fortra's network systems and accessed files containing the PII/PHI of NationsBenefits' and Aetna's customers, including Plaintiff and Class members (the "Data Breach").

5.      Defendants owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect and safeguard their PII/PHI against unauthorized access and disclosure.  Defendants breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect their customers' PII/PHI from unauthorized access and disclosure.

6.      As a result of Defendants' inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII/PHI was accessed and disclosed.

## PARTIES

### Plaintiff

7.      Plaintiff Eileen Clancy is a citizen of New York.  Plaintiff Glancy received a letter entitled "Notice of Data Breach" dated April 27, 2023, notifying Plaintiff that her first name, middle initial, last name, gender, health plan subscriber identification number, address, phone number, and date of birth had been expropriated in the Data Breach, a copy of said notice is appended hereto as Exhibit A.

8.     Aetna provides health insurance or related services to Plaintiff.  Aetna provided Plaintiff's PII/PHI to NationsBenefits in connection with Plaintiff's health insurance or related services.

9.     As a condition of receiving health insurance or related services, Defendants required Plaintiff to provide them with her PII/PHI.

10.     Based on representations made by Defendants, Plaintiff believed Defendants maintained reasonable security and practices to protect her PII/PHI.  With this belief in mind, Plaintiff provided her PII/PHI to Defendants in connection with receiving health insurance or related services.

11.     Defendants store and maintain Plaintiff's PII/PHI on their network systems and transmit or share that PII/PII with third parties, including Fortra.

12.     Plaintiff takes great care to protect her PII/PHI, including her Medicare information.  Had Plaintiff known that Defendants do not adequately protect the PII/PHI in their possession, she would not have obtained services from Defendants or agreed to provide them with her PII/PHI.

13.     Plaintiff received a letter from NationsBenefits notifying her that her PII/PHI was exposed in the Data Breach.

**Defendant NationsBenefits**

14.     Defendant NationsBenefits is a Florida corporation with its principal place of business in Plantation, Florida. NationsBenefits headquarters are located at 1801 NW 66th Avenue, Suite 100, Plantation, Florida 33313.

**Defendant Aetna**

15.     Defendant Aetna is a Pennsylvania corporation with its headquarters in Hartford, Connecticut.  Defendant Aetna's headquarters are located at 151 Farmington Avenue, Hartford, Connecticut 06156.

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(d)(2), because: (a) there are 100 or more Class members; (b) at least one Class member is a citizen of a state that is diverse from Defendants; and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

17.     This Court has personal jurisdiction over NationsBenefits because NationsBenefits is a Florida corporation and maintains its principal place of business in Florida.

18.     This Court has personal jurisdiction over Aetna because Aetna is engaged in substantial business activity in this state, including contracting to insure persons within this state.

19.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because NationsBenefits' principal place of business is in this District and a significant amount of the events leading to Plaintiff's causes of action occurred in this District.

## FACTUAL ALLEGATIONS

### NationsBenefits

20.     NationsBenefits is a leading provider of supplemental benefits, flex cards, and member engagement solutions that partners with managed care organizations to provide innovative healthcare solutions.  It offers customizable healthcare solutions through a diverse offering of supplemental benefits that are designed to drive growth, improve outcomes, reduce costs, and delight members.

21.     NationsBenefits' website includes a page detailing the Health Insurance Portability and Accountability Act ("HIPAA") rights of its customers.  NationsBenefits claims it will share its customers health information to "Treat you," "Run our organization," and "Bill for your services."

22.     NationsBenefits is required by law to maintain the privacy and security of your protected health information.  NationsBenefits promises that it will not use or share your information other than as described here unless you tell us we can in writing.

23.     Plaintiff and Class members are, or were, customers of NationsBenefits or health insurance or related services providers, including Aetna who entrusted NationsBenefits with their PII/PHI.

<u>**Aetna**</u>

24.     Aetna is the brand name used for products and services provided by one or more of the Aetna group of companies, including Aetna Life Insurance Company and its affiliates.

25.     Aetna claims to "value the trust you place in us."[1] Aetna states that its customers have a right to "[h]ave your medical records kept private, except when permitted by law or with your approval."[2]  Aetna also claims that "[p]rotecting the privacy and security of sensitive information is one of our highest priorities."[3]

26.     In its Notice of Privacy Practices, Aetna describes the ways it can use its customers PHI, including for healthcare operations, payment, and treatments.[4] Aetna also states that it will

---

[1]     *Aetna's Privacy Center*, AETNA https://www.aetna.com/legal-notices/privacy.html (last accessed June 8, 2023).

[2]     *HMO or PPO Rights and Responsibilities*, AETNA https://www.aetna.com/individuals-families/member-rights-resources/rights/hmo-ppo-member-rights.html (last accessed June 8, 2023).

[3]     *Aetna's Privacy Center*, *supra* note 1.

[4]     *Notice of Privacy Practices*, AETNA (Feb. 10, 2022), https://www.aetnamedicare.com/content/dam/aetna/pdfs/wwwaetnamedicarecomSSL/individual/2022/member/Notice_of_Privacy_Policies.pdf (last accessed June 8, 2023). Aetna has numerous privacy policies

not use its customer's PHI in ways not described within the Notice of Privacy Practices without written permission.[5]  Aetna further states it "must also follow the terms of the Notice [of Privacy Practices] in effect."[6]

27.     Aetna states that its customers have certain rights surrounding their PHI under federal law, and that "[f]ederal privacy law requires us to keep your PHI private."[7] Aetna acknowledges it "must also follow state privacy laws that are stricter (or more protective of your PHI) than federal law."[8]

28.     Aetna asserts it uses "administrative, technical and physical safeguards to keep your information from unauthorized access, and other threats and hazards to its security and integrity."[9] Aetna even promises to "continue to protect your information against inappropriate use or disclosure" after a customer's coverage ends.[10] Aetna further claims to "aim beyond the industry standard" when securing PHI.[11]

**The Data Breach**

29.     NationsBenefits uses software provided by Fortra to exchange files with health plans, including Aetna.[12]  NationsBenefits uploads, stores, transfers, or accesses its customers' PII/PHI using the software provided by Fortra.

30.     On or about January 30, 2023, cyber criminals accessed or acquired files containing

---

for various plans containing identical or substantially similar statements as those described herein. *E.g.*, https://www.aetna.com/document-library/legal-notices/documents/health-notice-of-privacy-practices.pdf.

[5]      *See id.*
[6]      *Id.*
[7]      *Id.*
[8]      *Id.*
[9]      *Id.*
[10]     *Id.*
[11]     17 Steps for Securing Health Information, Aetna https://www.aetna.com/document-library/about-aetna-insurance/document-library/17-steps-securing-health-information.pdf (last accessed June 8, 2023).
[12]     *See Notice Letter*, Aetna (Apr. 28, 2023), available at https://apps.web.maine.gov/online/aeviewer/ME/40/cc06cdee-0715-4eea-8b33-c391dba8fe5e.shtml (under "Notification and Protection Services" click link titled "Live Proof_L07_Redacted").

the PII/PHI of NationsBenefits customers, including information Aetna provided to NationsBenefits. Fortra notified NationsBenefits of the Data Breach on February 7, 2023.

31.    NationsBenefits began notifying affected persons of the Data Breach on or about April 13, 2023, over two months after learning of the Data Breach.   The notice letter NationsBenefits sent to Class members states the information affected by the breach includes Class members' "First Name; Last Name; Gender; Health Plan Subscriber Identification Number; Social Security Number; Address; Phone Number; Date of Birth; [and] Medicare Number."

32.    On or about April 27, 2023, Defendant sent Plaintiff and other Class members of the Data Breach a Notice of Data Breach ("Notice Letter"), informing them that:

> **What Happened?** NationsBenefits used software provided by a third-party vendor, Fortra, LLC ("Fortra"), to securely exchange files with your health plan. On or around January 30, 2023, Fortra experienced a data security incident in which a malicious actor(s) accessed or acquired the data of multiple organizations, including NationsBenefits. When we learned of this incident on February 7, 2023, we immediately took steps to secure our systems and launched an investigation, which was conducted by an experienced outside law firm and a leading cybersecurity firm. As part of our investigation, NationsBenefits analyzed the impacted data to determine whether any individual's personal information was subject to unauthorized access or acquisition. On February 23, 2023, NationsBenefits confirmed that, unfortunately, some of your personal information was affected by the incident.

33.    This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class members of the Data Breach's critical facts.  Without these details, Plaintiff's and Class members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

34.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class members, ultimately causing the exposure of Private Information.

35.     Upon information and belief, Defendant continues to maintain Plaintiff's PHI and PII, as well as that of all other Class members.

## **Defendants Knew, or Should Have Known, that Criminals Target PII/PHI**

36.     At all relevant times, Defendants knew, or should have known, that the PII/PHI that they collected, shared, and stored was a target for malicious actors.  Aetna warns its customers that "[t]hieves often steal Social Security numbers when they hack websites and computers."  Aetna also warns of the risk of medical identity theft and acknowledges "it's happening more and more in the United States."  NationsBenefits is clearly aware of the threat of a data breach, as it promises to "let you know promptly if a breach occurs that may have compromised the privacy or security of your information."

37.     Defendants knew or should have known of these risks.  Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII/PHI from cyber-attacks that Defendants should have anticipated and guarded against.

38.     It is well known amongst companies that store sensitive PII that sensitive information – such as the SSNs and medical information stolen in the Data Breach – is valuable and frequently targeted by criminals.

39.     Cyber criminals seek out PHI at a greater rate than other sources of personal information.  In a 2023 report, the healthcare compliance company Protenus found that there were 956 medical data breaches in 2022 with over 59 million patient records exposed.[13]  This is an

---

[13]     *See* PROTENUS, *2023 Breach Barometer*, PROTENUS.COM, https://www.protenus.com/breach-barometer-report (last accessed June 8, 2023).

increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[14]

40.     PII/PHI is a valuable property right.  The value of PII/PHI as a commodity is measurable.

41.     As a result of the real and significant value of this material, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII/PHI, and other sensitive information directly on Internet websites, making the information publicly available.

42.     All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.  According to a report released by the Federal Bureau of Investigation's Cyber Division, criminals can sell healthcare records for fifty (50) times the price of a stolen SSN or credit card number.

43.     Consumers place a high value on the privacy of that data.  Studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[15]

44.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has, thus, deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

[14]     *See id.*
[15]     Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

## **Theft of PII/PHI Has Consequences for Victims**

45.     The Federal Trade Commission ("FTC") warns consumers that identity thieves use PII/PHI to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[16]

46.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: change a billing address so the victim no longer receives bills; open new utilities; open a bank account and write bad checks; open a new credit card or loan; obtain a mobile phone; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.

47.     With access to an individual's PII/PHI, criminals can also commit all manner of fraud, including: using the victim's name and SSN to obtain government benefits; obtaining a driver's license or official identification card in the victim's name but with the thief's picture; or filing a fraudulent tax return using the victim's information.

48.     Theft of SSNs also creates an alarming situation for victims because those numbers cannot easily be replaced.  In order to receive a new number, a breach victim must demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

49.     A report published by the World Privacy Forum and presented at the U.S. FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

---

[16]     *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 8, 2023).

- Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

- Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

- Serious life consequences resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to the crime.

- Significant bills for medical goods and services neither sought nor received.

- Issues with insurance, co-pays, and insurance caps.

- Phantom medical debt collection based on medical billing or other identity information.

- Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own

- As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

**<u>Damages Sustained by Plaintiff and the Other Class Members</u>**

50.     Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in Defendants' possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

51.     This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

52.     Plaintiff brings this action on behalf of herself and all members of the following **Nationwide Class** of similarly situated persons:

> All persons whose personally identifiable information or personal health information was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

53.     The Nationwide Class asserts claims against Defendants for negligence, breach of fiduciary duty, breach of implied contract, and unjust enrichment.

54.     Alternatively, pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff brings this action on behalf of herself and a subclass consisting of all members of the following **New York Class** of similarly situated persons:

> All New York residents whose personally identifiable information or personal health information was compromised in the Data Breach by unauthorized persons, including all Illinois residents who were sent a notice of the Data Breach.

55.     Excluded from the Classes are NationsBenefits, LLC, and its affiliates, parents, subsidiaries, officers, agents, and directors; Aetna Inc., and its affiliates, parents, subsidiaries, officers, agents, and directors; as well as the judge(s) presiding over this matter and the clerks of said judge(s).

56.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

57.     The members of the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. NationsBenefits reported to the United States

- 12 -

Department of Health and Human Services that over 3,000,000 persons' information was exposed in the Data Breach.[17]

58.     Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

- whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII/PHI from unauthorized access and disclosure;

- whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII/PHI;

- whether Defendants had duties not to disclose the PII/PHI of Plaintiff and Class members to unauthorized third parties;

- whether an implied contract existed between Class members and Defendants, providing that Defendants would implement and maintain reasonable security measures to protect and secure Class members' PII/PHI from unauthorized access and disclosure;

- whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiff and Class members;

- whether Defendants breached their duties to protect Plaintiff's and Class members' PII/PHI; and

- whether Plaintiff and Class members are entitled to damages, and the measure of such damages and relief.

---

[17] *See Breach Portal*, U.S. DEP'T OF HEALTH AND HUMAN SERVS., https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed June 8, 2023).

59.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

60.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff, like all proposed members of the Class, had her PII/PHI compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

61.     Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that she has no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

62.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress from Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

## BREACH OF FIDUCIARY DUTY

63.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64.     As a condition of obtaining services or employment from Defendants, Plaintiff and Class members gave Defendants their PII/PHI in confidence, believing that Defendants would protect that information. Plaintiff and Class members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiff's and Class members' PII/PHI created a fiduciary relationship between Defendants and Plaintiff and Class members. In light of this relationship, Defendants must act primarily for the benefit of their customers, which includes safeguarding and protecting Plaintiff's and Class members' PII/PHI.

65.     Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. They breached that duty by failing to ensure that the third parties they contract with and share PII/PHI with properly protect the integrity of the system containing Plaintiff's and Class members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiff's and Class members' PII/PHI that they collected, shared, and stored.

66.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and

theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in NationsBenefits' and Aetna's possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

## COUNT II

## NEGLIGENCE

67.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

68.     Defendants owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding, securing, and protecting the PII/PHI in their possession, custody, or control.

69.     Defendants knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII/PHI and the importance of maintaining and using secure systems. Defendants knew or should have known of the many data breaches that have targeted companies that stored PII/PHI in recent years.

70.     Given the nature of Defendants' businesses, the sensitivity and value of the PII/PHI they maintain, and the resources at their disposal, Defendants should have identified and foreseen that the third parties they share information with could have vulnerabilities in their systems and prevented the dissemination of Plaintiff's and Class members' PII/PHI.

71.     Defendants make explicit statements on their websites that they are aware of the risk of potential data breaches, that they will follow privacy laws and regulations, and that they will use reasonable methods to protect the PII/PHI in their control.

72.     Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to ensure that the third parties they share PII/PHI with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to them—including Plaintiff's and Class members' PII/PHI.

73.     Plaintiff and Class members had no ability to protect their PII/PHI that was, or remains, in NationsBenefits' or Aetna's possession.

74.     It was or should have been reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to ensure that the third parties they share PII/PHI with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

75.     But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII/PHI would not have been compromised. The PII/PHI of Plaintiff and the Class was accessed and stolen as the proximate result of Defendants' failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by, inter

alia, ensuring that third parties they contract with and share PII/PHI with adopt, implement, and maintain appropriate security measures.

76.     As a result of Defendants' above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; € the continued risk to their PII/PHI which remains in Defendants' possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

## COUNT III

## BREACH OF IMPLIED CONTRACT

77.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78.     In connection with receiving health care services or employment, Plaintiff and all other Class members entered into implied contracts with Defendants.

79.     Pursuant to these implied contracts, Plaintiff and Class members benefited Defendants by paying monies to Defendants and provided Defendants with their PII/PHI. In exchange, Defendants agreed to, among other things, and Plaintiff understood that Defendants would: (a) provide health insurance or related benefits, products, or services, to Plaintiff and Class members; (b) take reasonable measures to protect the security and confidentiality of Plaintiff's and

Class members' PII/PHI; (c) protect Plaintiff's and Class members' PII/PHI in compliance with federal and state laws and regulations and industry standards; and (d) ensure third parties they contract with and share PII/PHI with implement and maintain reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI.

80.     The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Defendants, on the other hand.  Indeed, Defendants recognized the importance of data security and the privacy of their customers' PII/PHI. Had Plaintiff and Class members known that Defendants would not adequately protect their PII/PHI, they would not have paid for products or services from Defendants.

81.     Plaintiff and Class members performed their obligations under the implied contract when they provided Defendants with their PII/PHI and paid monies for products and services from Defendants, expecting that their PII/PHI would be protected.

82.     Defendants breached their obligations under their implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect and secure their PII/PHI, and in failing to ensure that the third parties they contract with and share PII/PHI with implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

83.     Defendants' breach of their obligations of the implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the resulting injuries to Plaintiff and Class members.

84.     Plaintiff and all other Class members were damaged by Defendants' breach of implied contracts because: (a) they paid monies (directly or indirectly) to Defendants in exchange

for data security protection they did not receive; (b) they now face a substantially increased and imminent risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (c) their PII/PHI was improperly disclosed to unauthorized individuals; (d) the confidentiality of their PII/PHI has been breached; (e) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (f) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (g) they overpaid for the services that were received without adequate data security.

## COUNT IV

## UNJUST ENRICHMENT

85.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86.     This claim is pleaded in the alternative to the breach of implied contract claim.

87.     In obtaining services from Defendants, Plaintiff and Class members provided and entrusted their PII and PHI to Defendants.

88.     Plaintiff and Class members conferred a monetary benefit upon Defendants in the form of monies paid for health insurance or related benefits or services with an implicit understanding that Defendants would use some of their revenue to protect the PII/PHI they collect, share, and store.

89.     Defendants accepted or had knowledge of the benefits conferred upon them by Plaintiff and Class members. Defendants benefitted from the receipt of Plaintiff's and Class members' PII/PHI, as this was used to facilitate billing and payment services, which enabled Defendants to carry out their business.

90.     As a result of Defendants' conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for and expected, and those payments without reasonable data privacy and security practices and procedures that they received.

91.     Defendants should not be permitted to retain the money belonging to Plaintiff and Class members because Defendants failed to adequately implement the data privacy and security procedures for themselves and the third parties that they contract with and share PII/PHI with that Plaintiff and Class members paid for and expected, and that were otherwise mandated by federal, state, and local laws and industry standards.

92.     Defendants should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds they received as a result of the conduct and Data Breach alleged herein.

## COUNT V

## INVASION OF PRIVACY

93.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94.     Plaintiff and Class members had a legitimate expectation of privacy to their PII and PHI and were entitled to the protection of this information against disclosure to unauthorized third parties.

95.     Defendants owed a duty to its current and former customers including Plaintiff and Class members, to keep their private information contained as a part thereof, confidential.

96.     Defendants failed to protect and released to unknown and unauthorized third parties the PII and PHI of Plaintiff and Class members.

97.     Defendants allowed unauthorized and unknown third parties access to and examination of the private information of Plaintiff and Class members, by way of Defendants' failure to protect the PII and PHI.

98.     The unauthorized release to, custody of, and examination by unauthorized third parties of the private information of Plaintiff and Class members is highly offensive to a reasonable person.

99.     The intrusion was into a place or thing, which was private and is entitled to be private.  Plaintiff and Class members disclosed their private information to Defendants as part of their medical care or employment with Defendants, but privately with an intention that the private information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

100.     The Data Breach at the hands of Defendants constitutes an intentional interference with Plaintiff's and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

101.     Defendants acted with a knowing state of mind when they permitted the Data Breach to occur because they were with actual knowledge that its information security practices were inadequate and insufficient.

102.     Because Defendants acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class members.

103.     As a proximate result of the above acts and omissions of Defendants, the private information of Plaintiff and Class members was disclosed to third parties without authorization, causing Plaintiff and Class members to suffer damages.

104.     Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that the PII and PHI maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come.  Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class members.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.     Certifying the Class as requested herein, designating Plaintiff as Class representative;

B.     Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.     Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendants from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit

monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims so triable.

DATED: June 9, 2023

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
STUART A. DAVIDSON (FBN 84824)

*s/ STUART A DAVIDSON*
STUART A. DAVIDSON

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone: 561/750-3000
Facsimile: 561/750-3364
Email: sdavidson@rgrdlaw.com

Thomas J. McKenna*
Gregory M. Egleston*
**GAINEY McKENNA & EGLESTON**
501 Fifth Avenue, 19th Fl.
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Pro hac vice forthcoming*

***Attorneys for Plaintiff Eileen Clancy***